UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Crim. No. 5:25-cr-00044-GFVT-MAS-1 |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MARK ANTHONY KING, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant King's Objections to the Magistrate's Report and Recommendation Regarding Motion to Suppress. [R. 27]. King moved to suppress evidence derived from the April 10, 2024, traffic stop that informed the charges contained in the indictment. [R. 19]. Magistrate Judge Matthew A. Stinnett held a motion hearing on October 30, 2025. [R. 25]. Taking the matter under advisement, Judge Stinnett issued his Report and Recommendation on November 24, 2025. [R. 27]. In that Report and Recommendation, Judge Stinnett recommended that the district court deny King's suppression motion. *Id.* King then timely objected to the Report and Recommendation. [R. 28].

**I**

King specifically states in his response that he does not object to any factual findings contained in Judge Stinnett's Report and Recommendation. *Id.* at 1. For that reason, the Court will not produce anew the entire factual background. Instead, the Court cites when necessary to Judge Stinnett's exhaustive and thorough recitation of the facts. The Court will provide only a brief recreation of the facts relevant to King's legal objections.

DEA agents witnessed the driver of a black Dodge Charger with Ohio tags engage in a

suspected drug deal at Kirklevington Park in Lexington. [R. 27 at 1–2]. The DEA agents contacted the Kentucky State Police about the suspected drug activity and gave the state troopers the license plate number and description of the vehicle. *Id.* at 3. At 4:50 p.m., Trooper Tyler Smith pulled over the vehicle in Rowan County for traffic violations involving excessive window tint. *Id.* King could not provide current proof of insurance. Smith returned to his police cruiser to conduct a license check. He attempted unsuccessfully to verify King's proof of insurance.

Four minutes after the stop began, Trooper Jack Gabriel arrived. *Id.* Gabriel is a KSP canine handler. He spoke to King briefly. He instructed King to go Smith's cruiser. Gabriel brought Smith another expired insurance card from King, and King indicated that he would continue looking for a valid insurance card. By this point, King was standing unrestrained on the side of the road by Smith's cruiser while Smith sat in the driver's seat. *Id.* at 4. At 4:56 p.m., Gabriel conducted a canine narcotics sniff of the Charger using his drug detection dog, Glenn. *Id.* at 4. Within a minute, Glenn positively alerted to the presence of narcotics in the vehicle. *Id.* Throughout the brief time of Glenn's deployment, Smith worked on preparing a written citation based on the window tinting violation while King stood outside his passenger side window. *Id.*

Gabriel then asked King to walk with him to Gabriel's cruiser. Officer Smith conducted a frisk search of his person. Still standing unrestrained, Gabriel asked King if he knew why the drug dog had alerted. King said he did not know. Gabriel then asked, "no weed or anything?" *Id.* at 5. King responded, "uh, in the glovebox." *Id.* Gabriel asked again, "there's a little bit of weed?" King said yes. Smith and Gabriel searched the vehicle and found marijuana and a grocery bag containing multiple bags of a white substance suspected to be methamphetamine. *Id.* The troopers returned to the area where King was standing, read the *Miranda* warnings, and

2

arrested him. *Id.*

## II

King raised two objections to Judge Stinnett's Recommendation and Report. The Court reviews this matter *de novo*. 28 U.S.C. § 636(b)(1). The Court reviews "those portions of the report or specified proposed findings or recommendations to which an objection is made." *Id.* "A specific objection 'explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *United States v. Conley*, 290 F. Supp. 3d 647, 653 (E.D. Ky. 2017) (citing *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007)). General objections failing "to identify specific factual or legal issues from the report and recommendation" are not permitted. *Id.*

### A

King objects first to Judge Stinnett's "reliance on *United States v. Bell*, 555 F.3d 535, 541 (6th Cir. 2009), for the holding that removing a driver from a stopped vehicle for purposes of a dog-sniff is permitted by the Fourth Amendment." [R. 28 at 1]. King argues that *Rodriguez v. United States*, 575 U.S. 348, 357 (2015), stands for the proposition that a dog sniff of a car is unlawful if it adds time to the stop. [R. 28 at 2].

An officer's use of a drug-sniffing dog during a traffic stop does not implicate the Fourth Amendment if the use of the dog does not extend the length of the stop. *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). A traffic stop justified only by the observation of a traffic violation becomes unlawful if it is prolonged beyond the time reasonably required to complete the issuance of a traffic citation. *Rodriguez*, 575 U.S. at 350. An officer does not violate the Fourth Amendment "merely by asking a driver to exit a vehicle to effect a dog sniff when doing so does not extend the duration of the stop and does not cause the officer unreasonably to deviate from

3

the purpose of the initial stop." *Bell*, 555 F.3d at 543.

King is correct that the Supreme Court issued the *Rodriguez* decision six years after the Sixth Circuit issued the *Bell* decision. However, he is incorrect that the decision in *Rodriguez* somehow blunts the applicability of *Bell*'s holding. *Rodriguez* is clearly distinguishable from King's case because "although the present case and *Rodriguez* both involved traffic violations, in *Rodriguez* there were no underlying circumstances beyond the traffic violation itself to justify the stop that eventually led to the dog sniff." *United States v. Salas*, 820 Fed. App'x 405, 412 (6th Cir. 2020). Here, the DEA had informed the KSP of the suspected drug deal that took place in Lexington and law enforcement tailed King "from the time [he] left the parking lot until the later traffic stop by KSP." [R. 27 at 3]. The Sixth Circuit, evaluating *Rodriguez*, held that "even if minor delays to conduct a dog sniff are unconstitutional for routine traffic stops, officers may still extend a stop to conduct a dog sniff when such action is supported by reasonable suspicion of criminal activity." *Salas*, 820 Fed. App'x at 412. Without question, the troopers had reasonable suspicion that King was engaged in criminal activity based from the communications between the DEA and the KSP. *See* [R. 27 at 3]. The Sixth Circuit has routinely held after *Rodriguez* that officers may extend a stop to conduct a sniff when such action is supported by reasonable suspicion. *See Salas*, 820 Fed. App'x at 412.

The officers here did not even extend the traffic stop. By the time the drug dog began the sniff of the vehicle, Smith was still writing the ticket for the window tinting. [R. 27 at 4]. The entire duration – from Smith pulling over King to the conclusion of the dog sniff – took just seven minutes. *Id.* at 3–4. There are no facts suggesting that the troopers actually extended the stop in any way, and if anything acted expeditiously in conducting the sniff while Smith was completing the ticket for the window tint. Additionally, the troopers did not ask King to exit the

4

car for the purposes of the drug dog. They had him go to Smith's cruiser so that he could continue working with Smith on addressing whether he had valid proof of insurance. *Id.* The purpose was not to remove King for the purpose of conducting a dog sniff, as King puts it.

For all these reasons the Court finds that the troopers did not unlawfully extend the stop in violation of the Fourth Amendment.

**B**

King's second objection addresses the conversation that the troopers had with King after the drug dog positively identified for narcotics. King argues that Gabriel's question to King was intended to elicit an incriminating response and thus constituted a custodial interrogation for the purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Fifth Amendment holds that "no person… shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda*, the Supreme Court held that "the prosecution may not use the statements… stemming from custodial interrogation of the defendant" unless the prosecution informed the accused of their various rights.[1] *Miranda*, 384 U.S. at 444. The *Miranda* majority defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

A suspect is "in custody" for *Miranda* purposes if there has been a formal arrest or restraint on freedom of movement. *United States v. Ray*, 803 F.3d 244, 266 n.12 (6th Cir. 2015) (citing *Mason v. Mitchell*, 320 F.3d 604, 631 (6th Cir. 2003)). A person is in custody for purposes of *Miranda* if in light of the questioning, a reasonable person would have felt they were not free to terminate the encounter and leave. *Howes v. Fields*, 565 U.S. 499, 509 (2012). The

---

[1] That is, the *Miranda* warnings made famous by popular media. *See Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).

5

Sixth Circuit considers four non-exhaustive factors in determining the custody determination: "(1) the location of the interview; (2) the length and manner of the questioning; (3) whether there was any restraint on the individual's freedom of movement; and (4) whether the individual was told that he or she did not need to answer the questions." *United States v. Williams*, 998 F.3d 716, 736 (6th Cir. 2021) (citing *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010)). These factors guide the Court's analysis in determining whether a person is in custody for purposes of *Miranda*. *Id.*

The first factor weighs in the government's favor. The conversation took place on the side of the road, in full view of the public on the roadways. Judge Stinnett aptly noted that "King was never placed in the cruiser, handcuffed, or transported elsewhere; he remained on the shoulder of a public interstate – a setting the Supreme Court has emphasized reduces the risk of coercive public conduct." [R. 27 at 14].

The second factor also weighs in the government's favor. The questioning was exceedingly short, lasting just a few exchanges between Gabriel and King. *Id.* at 5. Gabriel simply asked if King knew why the dog alerted, to which King said he did not know. Gabriel then asked if there was marijuana in the car, to which King said yes – there was marijuana in the glovebox. Gabriel asked the questions in a "conversational tone, without any indication of hostility or coerciveness." *Id.* at 14. The Sixth Circuit has held that interviews of "short duration – lasting only a few brief questions" and officers' non-hostile tone is a factor that weighs in favor of the government. *See Hinojosa*, 606 F.3d at 883.

The third factor weighs in favor of the government as well. At no time during this questioning was King restrained by officers. Indeed, this conversation was happening where King was standing on the side of the road and while at least one of the officers, Smith, was inside

6

his police cruiser. The Sixth Circuit has stated that actions such as not placing a defendant in handcuffs or "otherwise restraining his freedom" weigh in favor of the government. *Id.*

King argues that he was not free to leave because he had "been told to get out of the vehicle, his vehicle had been turned off, the officer had his insurance card, and there were multiple officers present." [R. 28 at 2]. None of these facts weigh so heavily against the government as to suppress King's own voluntary statements. He was out of his vehicle, but only to help Smith figure out whether they could locate some confirmation of his insurance coverage. The facts indicate that police turned off King's vehicle after they asked him for permission to do so and he granted it. [R. 27 at 4]. At this point, nothing would have stopped King from asking the officers to give him his ticket for the window tinting and lack of insurance and going on his way. The fact that he did not have his outdated insurance card does not indicate he was being detained by law enforcement.[2] No driver would feel restrained because police are holding on to an invalid and outdated proof of insurance. As to the number of officers, it is well-established that "a cluster of officers does not transform a noncustodial interview into a custodial interview." *United States v. Anderson-Bagshaw*, No. 1:11-CR-257, 2011 U.S. Dist. LEXIS 100000, at *13 (N.D. Ohio Sep. 6, 2011) (citing *United States v. Robinson*, 217 Fed. App'x. 503, 507–09 (6th Cir. 2007); *United States v. Flores*, 193 Fed. App'x 597, 605–06 (6th Cir. 2006)). None of King's objections warrant a finding that this factor weighs in his favor.

As to the fourth factor, police never told King that he did or did not have to answer their questions. But as the Sixth Circuit makes clear, "a failure to do so does not automatically render the encounter custodial. Rather, it is merely 'one factor among many' to be considered."

---

[2] This is different than when a police officer remains in control of a motorist's driver's license, where "no reasonable motorist would feel free to drive away, as this would require the motorist to either drive without a license or abandon [their] car." *United States v. Black*, 240 Fed. App'x 95, 100 (6th Cir. 2007).

7

*Hinojosa*, 606 F.3d at 883 (quoting *United States v. Panek*, 552 F.3d 462, 467 (6th Cir. 2009)). Judge Stinnett wrote that "[w]hile King was not expressly told he could decline to answer, he had just refused Gabriel consent to search his vehicle, demonstrating his awareness of the ability to refuse police requests."[3]  [R. 27 at 14].  The Court agrees with Judge Stinnett's analysis on this factor.

Taken together, the factors weigh heavily in favor of the government.  Based on the totality of the circumstances, the brief conversation between Gabriel and King concerning the dog's alert "did not present a custodial environment such that *Miranda* warnings were required prior to questioning." *Hinojosa*, 606 F.3d at 884.  The Court finds that the troopers did not violate King's Fifth Amendment rights.

### III

Accordingly, and the court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. King's Objections **[R. 28]** to the Magistrate Judge's Report and Recommendations are **OVERRULED**;

2. Judge Stinnett's Report and Recommendation **[R. 27]** is hereby **ADOPTED** as and for the Opinion of the Court;

3. King's Motion to Suppress **[R. 19]** is **DENIED**.

---

[3] Citing *Hinojosa*, 606 F.3d at 883.

This the 2d day of December, 2025.

Gregory F. Van Tatenhove
United States District Judge